UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANETTE MEYER and BEN MEYER, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| vs. | ) CAUSE NO. 3:13-CV-142 RLM |
| | ) |
| BIOMET, INC. and | ) |
| BIOMET ORTHOPEDICS, LLC, | ) |
| | ) |
| Defendants | ) |

## OPINION and ORDER

A hearing was held on March 26, 2015 on the motion of plaintiffs Danette and Ben Meyer for enforcement of settlement agreement. Based on the parties' arguments and submissions, I deny the plaintiffs' motion.

### BACKGROUND

The Meyers rely on the following facts to support their motion. The Meyers say that Mrs. Meyer's medical records confirm that she qualifies under paragraph 2(a) of the Settlement Agreement for inclusion in Group 1. None of the discounts in paragraph 2(b) of the Settlement Agreement apply to this case, so the Meyers registered their case in Group 1 providing for a base compensation award of $200,000.

The Meyers note that paragraph 2(d) of the Settlement Agreement required Biomet to notify plaintiffs' counsel by May 9, 2014 if Biomet disagreed with the plaintiffs' categorization of their claim and/or believed that any discounts were applicable. The Meyers say their counsel received no notification from Biomet by then; in fact, they say, in a portal posting Biomet categorized their case in Group 1. *See* Mot., Exh. D. The Meyers maintain that they agreed to accept the $200,000 award and the parties "reached a meeting of the minds on this issue," as shown by email correspondence from the Settlement Oversight Committee stating that "[t]he purpose of the categorization is to have a meeting of the minds as to the base value of the case based on the values agreed to in the Master Settlement Agreement." Mot., Exh. B. The Meyers believe this process locked them into a compensation award of $200,000.

The Meyers claim the Settlement Oversight Committee's email told plaintiffs and their counsel that they had the option to seek an enhancement to the base award amount pursuant to the deadlines in the Master Settlement Agreement. They report that they timely requested an enhanced payment before the May 30 deadline based on their belief that because Mrs. Meyer's metallosis is well-documented and her medical history included some of the specified criteria (second revision, dislocations, and infection), they qualified for the enhanced compensation. The Meyers say they understood that under the terms of paragraph 3(a) of the Settlement Agreement, the issue of an enhanced payment was to be

decided through mediation, but after the May 30 deadline for requesting an enhancement, Biomet notified their counsel that the company was challenging all of the requests for enhanced compensation and withdrawing the initial $200,000 awards in those cases.

The Meyers believe the Settlement Agreement doesn't allow Biomet to contest a case simply because enhanced compensation is sought – they claim the Settlement Agreement makes clear that Biomet "may only contest a case for 'good cause' and such good cause exists only where there is an 'objective explanation for a premature failure of the hip system with the absence of evidence of a MoM injury.'" Mot., at 8 (*quoting* Settlement Agreement, p. 5). The Meyers assert that Biomet's act of contesting their case only after an enhancement request violates the terms of the Settlement Agreement.

The Meyers claim the requirement of mediating enhanced payment requests doesn't change their entitlement to the $200,000 compensation award that Biomet originally agreed to under paragraph 2(a) of the Settlement Agreement. Even though they believe they qualify for, and are entitled to, an enhanced payment, the Meyers "are prepared to forego any such benefit upon receipt of the base award and execution of the proper releases." Mot., at 10. The Meyers ask the court to enforce the Settlement Agreement and require Biomet to honor the $200,000 award originally agreed to by the parties.

3

Biomet maintains it never reached a binding settlement with the Meyers "because there was no meeting of the minds on the most crucial settlement term: the amount of money plaintiffs would receive in exchange for settling this case and releasing their claims against Biomet. While plaintiffs believe they are entitled to enhanced compensation, Biomet does not." Resp., at 1.

According to Biomet, the Settlement Agreement sets forth a two-step process for settling a case. The first step is categorization of the case by the plaintiffs and by Biomet; after that, plaintiffs have a chance to request an enhancement and Biomet has a chance to contest the enhancement. Only after completion of both steps can a plaintiff accept an amount, sign a release, and effectuate a settlement.

Biomet says that while the Meyers initially said they were seeking $200,000 as part of Group 1, they then asked for more money, and Biomet disagreed with their position. Biomet says whether it had "good cause" to contest a case is an issue for a mediator to decide, not the court. Biomet asserts that paragraph 3 of the Settlement Agreement requires that contested cases be mediated – Biomet says that when it timely contested the Meyers' case, the Meyers should have proceeded to mediation; a motion asking this court to enforce settlement isn't the proper vehicle for resolving this dispute.

DISCUSSION

Paragraph 3 of the Settlement Agreement provides that plaintiffs may qualify for enhanced compensation, MSA, ¶ 3(a); Biomet may seek to reduce amounts paid to specific plaintiffs, MSA, ¶ 3(b); and cases that fall under paragraphs 3(a) and/or 3(b) are to be mediated. MSA, ¶ 3(c). The Meyers interpret the mediation requirement of paragraph 3 as applying only to the enhancement amount being sought, *i.e.*, the parties would attempt to agree on an amount above the $200,000 base compensation award for a qualifying Group 1 plaintiff. If an agreement was reached, the agreed enhancement amount would be added to the $200,000; if no agreement was reached, the Group 1 plaintiff would be entitled to the $200,000 award. Biomet disagrees with the Meyers' interpretation and says the mediation requirement applies to any contested case in which a dispute over the amount a plaintiff is to receive exists.

The cases in this MDL have proceeded under the interpretation relied on by Biomet: a dispute over the amount a plaintiff is to receive must go to mediation before it comes before me. Paragraph 3(b) of the Settlement Agreement gives Biomet the right to contest any case if the company "believes that there is good cause to reduce the amounts to be paid on cases that qualify for payments." MSA, ¶ 3(b). The Meyers say Biomet lacked good cause to challenge their case and reduce the amount they were to be paid, but "good cause" under paragraph 3(b) is subjective, rather than objective, and isn't limited to the examples set out in

5

that paragraph. If the Meyers disagreed with Biomet's decision to contest their case, their remedy was to proceed to mediation.

Based on the terms of the Settlement Agreement, the Meyers' case fell in the "contested cases" category once Biomet revoked the offer to settle. The Meyers then had two options – mediate their claims or proceed to trial on the merits. Although the March 2 deadline for mediation has passed, the Meyers filed their motion on February 20, before the deadline. The hearing was held after the March 2 deadline only because of counsels' unavailability before the March 26 date when the hearing was finally held. Mediation shouldn't be excluded as an option. Alternatively, the Meyers have indicated that they are prepared to forego any claim for an enhancement and execute the proper releases for receipt of the base compensation award of $200,000. I strongly encourage the parties to determine which option is best for all involved and pursue a settlement of this case.

CONCLUSION

Based on the foregoing, the court DENIES the Meyers' motion to enforce settlement [docket # 76].

SO ORDERED.

ENTERED:   April 6, 2015

/s/ Robert L. Miller, Jr.
Judge, United States District Court